MONTICELLO PLYWOOD BOX CO. *v.* HANEY.

(Division A. June 13, 1932.)

[142 So. 497. No. 29962.]

G. Wood Magee, of Monticello, for appellant.

624

**C. E. Gibson**, of Monticello, for appellee.

**Cook, J.**, delivered the opinion of the court.

The appellee, Smiley J. Haney, filed this suit in the circuit court of Lawrence county against the Monticello Plywood Box Company, for damages for the alleged breach of a contract of sale of lumber, and, from a judgment for the appellee for one thousand four hundred thirty dollars, the defendant prosecuted this appeal.

The appellee was a manufacturer of lumber at Monticello, Mississippi, and the appellant was engaged in the manufacture of plywood boxes in the same town. The appellee secured an order to sell and deliver to the appellant, at its plant, five hundred thousand feet of air-dried lumber of a certain kind and grade, of the uniform thickness of three-quarters of an inch, at a stipulated price. This lumber was ordered for the purpose of being used in making cleats or rims for plywood boxes, and the testimony is to the effect that these cleats or rims were nailed or fastened on the plywood material with pressure hammers, and, in order for these hammers to operate effectually, it was necessary for the lumber to be sized and dressed to a uniform thickness. The appellee purchased and installed a planer, and proceeded to manufacture a part of the lumber, and thereafter delivered to the appellant one car of lumber containing about twenty thousand feet. When this car of lumber was received by the appellant, it notified the appellee that the lumber was so defectively manufactured as to be wholly unfit for the purpose for which it had been ordered, and requested a conference with appellee at appellant's plant, where the lumber was being unloaded. In response to this request, the appellee went to the place where the lumber was being unloaded, and after some negotiations proposed to stand the expense of unloading and to abide by the inspection of appellant's inspector, and to demand payment only for the lumber that was good and usable for the purpose for which

it was ordered, the appellee testifying that: "I told him the lumber that Mr. Poole rejected as bad to put it in one pile and the good in another pile, and that what he couldn't use would not have to be paid for, and that I just wanted him to keep what he thought he could use and was good." The lumber was unloaded and inspected, and thereafter the appellee sent the appellant an invoice for the car of lumber, less the culls amounting to two thousand twenty-four feet, at sixteen dollars per thousand feet. The appellant accepted only about two thousand seven hundred fifty feet of the car of lumber, and tendered the appellee a check for forty-three dollars and fifty cents in payment therefor at the contract price of sixteen dollars per thousand feet, and canceled the contract.

On the trial of the cause voluminous testimony was introduced by the respective parties as to their negotiations in reference to the car of lumber that was tendered, as to the amount of the lumber that was so defective as to be unfit for the purpose for which it was manufactured, as to whether or not the appellee's sawmill and planer were in such a worn and defective condition as to render it impossible to manufacture lumber which substantially complied with the contract, as to the type of millwork and grade of lumber required by appellant in its business, as to the efforts put forth by appellee to induce appellant to permit him to make further shipments of lumber manufactured at his mill, or purchased in the open market, and as to which one of the parties breached the contract. This testimony was sharply conflicting on all material points. The appellee also offered in evidence the rules and regulations of the Southern Pine Association containing the specifications for grades of Southern pine lumber, showing what constitutes No. 2 common and better lumber, the grade and class called for by the contract here in controversy, and also showing that, although the grading of lumber

is not an exact science and no arbitrary rules for the inspection of lumber can be satisfactorily maintained, five per cent below grade is a reasonable variation in judgment between the inspectors and graders.

Upon the conflicting testimony the cause was submitted to the jury on instructions for the appellee, the correctness of which is vigorously challenged by the appellant. The first instruction criticized by the appellant merely directed the jury to return a verdict for the appellee if it believed from the preponderance of the evidence that the appellant breached the contract. The criticism of this instruction is that it failed to predicate the appellee's right to recover upon his being ready, willing, and able to perform the covenants on his part contained in the contract; and in support of this criticism the appellant relies on the announcement of the court in the case of Leek Milling Co. v. Langford, 81 Miss. 728, 33 So. 492, 493, wherein, in a suit for the breach of a contract, the court below had instructed the jury that, to be entitled to recover, the plaintiff must have been ready and willing to perform, and this court held that the instructions given for the appellee were "erroneous, in failing to predicate the appellee's right to recover upon his being able or in a condition to perform the covenants on his part contained in the contract." We think the criticism of this instruction is well taken, but the appellee contends that the error therein, if any, is cured by the instructions granted the appellant. In view of the fact, however, that we are of the opinion that the case must be reversed on other grounds, it will be unnecessary to decide whether the error complained of is cured.

The appellant next assigns as error instruction No. 2 granted to the appellee, which reads as follows: "The court instructs the jury for the plaintiff that even though you may believe from the evidence in this case that a part of the lumber manufactured and shipped

to defendant was not up to the specifications contained in the order introduced in evidence, and even though you may believe from the evidence in the case that the machinery used to manufacture said lumber was defective, you cannot find for the defendant, unless you believe from the evidence that the plaintiff failed and refused in some other particular to comply with his part of the contract."

The record discloses that, in the trade territory of the parties to the contract here involved, which is a part of the territory served by the Southern Pine Association, a percentage of defective lumber or culls is permissible in effecting a substantial compliance with a contract for delivery of lumber, but by no custom or rule of construction of such contracts could this instruction correctly announce the law applicable to the facts in this case. By this instruction the jury was in effect told that even if a part of the lumber manufactured and shipped to the defendant was not up to the specifications contained in the order, this constituted no breach of the contract which would entitle this defendant to a verdict in its favor. The converse of the proposition stated in this instruction would in effect be that the plaintiff would be entitled to recover if any part, however small, of the lumber delivered was in compliance with the specifications of the contract, unless he had failed or refused to comply with his contract in some other particular.

While there is ample authority in other jurisdictions for the view that, where in the first delivery on an entire contract, the seller furnishes goods so inferior and defective as not to substantially comply with the terms and requirements of the agreement, the purchaser may at once rescind the contract, it will be unnecessary to here express any opinion on that exact question as there are here involved facts bearing upon the right of rescission other than the mere fact that an uncertain amount

of defective and inferior materials was furnished in the first delivery. The proof shows that the appellee was insisting that ninety per cent of the lumber tendered was in accordance with the specifications of the contract, and was demanding payment for that amount of lumber, while the appellant contended that only about fourteen per cent of it was up to the specifications and fit for the use for which it was purchased. In accordance with this contention, the appellant tendered to the appellee forty-three dollars and forty cents for the lumber that was up to the specifications of the contract and fit for the purpose for which it was ordered, and this the appellee refused to accept, but demanded the full contract price of the car of lumber, less two thousand twenty-four feet, of the contract value of thirty-two dollars and twenty-eight cents. There was thus presented a sharp controversy as to whether or not the major part of the lumber tendered was up to the required specification; and on the trial of the cause the parties offered evidence to support their respective contentions. If, in fact, the major part of the lumber tendered by the appellee as a compliance with his contract, and which he contended did comply with his contract, was so defective as to be unfit for the purpose for which it was ordered, the appellant had a right to assume that future deliveries would be of like character and was entitled to cancel the contract.

The instruction complained of denied the appellant this right, and, in effect, told the jury that appellee was entitled to recover if any part of the lumber tendered substantially complied with the contract. It was admitted that about two thousand seven hundred fifty feet of the lumber substantially complied with the contract, and, consequently, this instruction was, in effect, peremptory.

Instruction No. 4 granted to the appellee is subject to the same criticism as instruction No. 2, discussed

above. The meaning of instruction No. 6 granted to the appellee is not entirely clear. It appears to direct the jury to return a verdict for the appellee only for the contract price of that part of the car of lumber tendered which complied with the contract, and, if so, it was in conflict with other instructions granted the appellee in so far as the measure of damages is concerned. For the errors in the instructions granted the appellee, the judgment of the court below will be reversed, and the cause remanded.

Reversed and remanded.